## In Equity.

### TABER D. BAILEY, Trustee,

*vs.*

### GEORGE H. WORSTER, Administrator, et als.

### Penobscot.    Opinion November 19, 1907.

*Equity Pleadings.   Bill and Answers.   Trusts.   Trustee.   Beneficiary.   Chancery Rule XXVII.*

1. When a cause in equity is heard on bill and answers, the court is limited to the consideration of such facts as are properly charged, and are admitted.

2. When a complainant in a bill in equity merely states that he "is informed and believes" that certain facts are true, the form of charging is fatally defective.

3. When a defendant answering says that "he has no information as to the correctness of the complainant's statements," and makes no other denial, it is not a sufficient traverse of an allegation well charged.

4. Statements of facts in a bill, under information and belief merely are not to be taken as true under Chancery Rule XXVII, though not traversed by a sufficient answer.

5. Although the court will, under proper circumstances, execute a trust which the trustee has neglected or improperly failed to execute it will not interfere to execute a trust which could have been executed in the lifetime of the beneficiary, but which was not so executed, and which under the circumstances it was not then the duty of the trustee to execute.

6. When it appears that the trustee was ready and willing to do his duty, but that the beneficiary objected and prevented his doing so, the court will not execute the trust after the death of the beneficiary.

7. A trustee cannot compel a beneficiary to receive the benefits of the trust, and it is not his duty to execute it against the will of a beneficiary, who is sui juris.

8. In the case at bar the trustee is advised that he has no authority to sell the trust estate for the purpose of paying the claims of the defendants, Witham and Williams, or any other similar claims.

In equity.   On report.   Bill sustained and decree to be entered as stated in the opinion.

Bill in equity brought by "Taber D. Bailey of Bangor, in the County of Penobscot, State of Maine, Trustee under the last will and testament of Albion K. P. Leighton, late of said Bangor, deceased," and "against George H. Worster of said Bangor, Administrator with the will annexed of the estate of Mary C. Leighton, late of said Bangor, deceased, and the following named persons, being the only persons now interested as legatees and devisees, or otherwise, under the will of Albion K. P. Leighton of said Bangor deceased, namely: John W. Leighton of Columbia Falls in the County of Washington, in said State of Maine, Miss Hattie Crowell of Stoughton, in the Commonwealth of Massachusetts, Mrs. Walter B. Goodenow of Stoughton, in the Commonwealth of Massachusetts, George Crowell of New Haven, in the State of Connecticut, Harvey Leighton of said Columbia Falls, and Clifford Leighton of Addison in said County of Washington, in said State of Maine; and Abbie K. Witham of said Bangor and Mary P. Williams of said Bangor, persons who assisted in furnishing necessary support, care and maintenance of said Mary C. Leighton in her last sickness," and praying for a construction of said will of said Albion K. P. Leighton, and for instructions.

At the April term, 1907, of the Supreme Judicial Court, Penobscot County, "this cause came on for hearing upon bill and answers and it appearing that there were questions of law involved of sufficient importance to justify the same and the parties consenting thereto and requesting that the case should be reported," the case was "reported to the Law Court for that court to pass upon and decide all questions involved."

All the material facts appear in the opinion.

*Taber D. Bailey,* for himself.

*George H. Worster,* for himself.

*Matthew Laughlin,* for Mary P. Williams and Abbie K. Witham.

*Martin & Cook,* for Hattie Crowell, Mrs. Walter B. Goodenow, George Crowell and Clifford Leighton.

*C. A. Bailey,* for John W. Leighton and Harvey Leighton.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J.   This bill in equity is brought by the trustee under the will of Albion K. P. Leighton, praying for a construction of the will, and for instructions.

By the will one undivided half of the testator's estate was given to his wife, Mary C. Leighton, absolutely.   The other half was given in trust for the benefit of his wife.   The terms and provisions of the trust were as follows:   "Said trustee is to pay the net income of all the property held by him by virtue hereof, promptly, as soon as realized, to my wife, Mary C. Leighton, during her natural life.   If my said wife shall at any time desire to sell any piece of property of which she owns half under the provisions of this will, the said trustee shall, if requested by her, join with her in the sale, conveying the half held in trust, and shall receive and hold in trust the proceeds of said half.   If the necessities or comfort of my said wife require means beyond the net income of the half of the property taken by her under this will, and beyond also the income of the property held in trust, so that it becomes necessary for her comfort to realize from the principal fund or estate, then I desire that such amount as she may require shall be taken equally from the half taken by her under this will and the half held by the trustee, said trustee making such sales or other arrangements as may be necessary to carry out the intention hereof, which is, that in the event of the income of the entire estate not sufficing for her wants, the two halves of the estate shall be diminished equally, so that, at the time of her death, the half held by the trustee which then goes to my heirs, and the half held by her, which will go at her death according to her desires, shall be equal.   For the purposes mentioned in this will said trustee shall have full power to sell and convey any and all property so held in trust; and I do not desire my wife to be limited to funds merely sufficient for absolute necessities, but that she may live in comfort and ease, though this should necessitate the expenditure of the entire trust estate."

The will also provided for the distribution of what might remain of the trust estate after the death of the wife.

Albion K. P. Leighton died in 1892, and Mrs. Leighton, his widow, in 1906. It is admitted that practically all of the estate except the homestead, both that which was given to her directly and that which was given in trust was used by her, in her lifetime, and that at her death there remained only the homestead valued at about $3,200, one-half of which was her own, and the other half belonged to the trust estate.

The complainant alleges that he "is informed and believes" that the income of the estate, together with the personal estate or proceeds thereof which belonged to Mrs. Leighton's estate, and the proceeds of sales of real estate made by Mrs. Leighton and the trustee were not sufficient comfortably to support and maintain Mrs. Leighton as provided in the will of her husband, and that in order for her comfortably to support and maintain herself in the homestead, for many years prior to her death, "it became absolutely necessary that some person or persons should either support and maintain her or furnish the means whereby she might obtain support and maintenance; and that he "is informed and believes" "that during the last six or seven years, more or less, of the life of the said Mary C. Leighton, she was a confirmed invalid," and had to be nursed and taken care of in the homestead, and that Abbie K. Witham, a niece, nursed and took care of her, and that Mary P. Williams, another niece, loaned and advanced money which was used for the express purpose of assisting in furnishing the necessary care, support and maintenance for Mrs. Leighton during the last years of her life; also that he "is informed and believes" that these nieces made these provisions "in favor of their said aunt, not gratuitously, and not as mere volunteers, but with the expectation that they would be renumerated for the same out of the entire estate which passed in any manner under the will of Mr. Leighton." The complainant then alleges directly a demand by these nieces that the trust estate be used conjointly with the proceeds of the estate of Mrs. Leighton to pay them for their said services and loans.

It is admitted that the estate of Mrs. Leighton has been repre-

sented insolvent, and the Witham and Williams claims, for these services and the loan, have been allowed in the Probate Court, for about $3,500, in the aggregate.

The real purpose of this bill is to ascertain whether these claims can be paid in part out of the trust estate. To enforce the right of the claimants to such payment, the existence of certain material facts must be alleged in the bill, and they must either be admitted or proved.

The case comes before us on bill and answers, and we are limited to the consideration of such facts as are properly charged, and are admitted. The phraseology of the bill and the tenor of some of the answers are such that it is not easy to say what has been sufficiently alleged and what admitted. As to many important charges the complainant merely states that he "is informed and believes." Such a form of charging is fatally defective. Whitehouse's Equity Practice, sect. 208. On the other hand, as to several important matters, some of the defendants answering say that "they have no information as to the correctness of the complainant's statements," and make no other denial. This is not a sufficient traverse of an allegation. Whitehouse's Equity Practice, sect. 373.

Chancery Rule XXVII provides that " all allegations of fact well pleaded in bill, answer or plea, when not traversed, shall be taken as true." The difficulty, however, is that the allegations to which these defective answers were made were not well pleaded. The complainant did not allege facts, but only that he was informed and believed certain allegations. In such cases Chancery Rule XXVII does not apply.

It is admitted, however, as charged, that Mrs. Leighton in order comfortably to support herself in sickness and in health had consumed practically all of the original estate except the homestead, and in addition had contracted debts for her support.

It is admitted that Abbie K. Witham and Mary P. Williams are creditors of the estate of Mrs. Leighton for nursing and care, and for money loaned and advanced for the care, support and maintenance of Mrs. Leighton during the last years of her life.

It is admitted that the net income of both halves of the estate

were not sufficient for the necessities and comfort of Mrs. Leighton.

It is not admitted by all the defendants that the services and loan represented by the Witham and Williams claims were not gratuitous, nor that these parties did the work and loaned the money with the expectation that they would be remunerated for the same out of the entire estate. Whether admitted or denied, however, the result will not be affected. That which is admitted shows that during the later years of Mrs. Leighton's life it became " necessary . for her comfort to realize from the principal fund or estate," within the meaning of the will, and that the trustee did not make the sale provided for in the will. The question to be decided is, can the court properly direct the trustee to sell the trust estate and with the proceeds pay these claims, conjointly with the estate of Mrs. Leighton, or otherwise.

It may be conceded that the power and trust created by the will in favor of Mrs. Leighton were imperative and not discretionary. See *Cutter* v. *Burroughs*, 100 Maine, 379, and cases cited. In case of such an imperative trust it is the duty of the trustee to execute it when the necessity arises. And when the execution has failed for want of a trustee, or when the trustee has improperly failed to execute it, the court will cause it to be executed, if it can be done. It will even act retrospectively, after the immediate occasion for the execution has passed. If the trustee is deceased, it will hold that the legal title which has passed to his heirs, or to the devisees of the testator, is charged with the trust. It will do what the trustee ought to have done. If the beneficiary has deceased, it will, in a proper case, enforce the trust by subrogation in favor of those who furnished the support which the trustee ought to have furnished. *Cutter* v. *Burroughs*, supra.

We have no occasion to inquire whether the Witham and Williams claims are of such a character as ordinarily should be protected by the enforcement in their favor of a trust created for the benefit of one to whom they have furnished the means of comfort and support which the trust estate was intended to furnish. For if it were to be assumed that they are such, and not mere creditors' claims, the relief sought cannot be granted.

As the court will, under proper circumstances, execute a trust which the trustee has neglected or improperly failed to execute, so, on the other hand, we think the court should not interfere to execute a trust which could have been executed in the lifetime of the beneficiary, but which under the circumstances it was not then the duty of the trustee to execute.

The complainant alleges, and it is admitted, that one of the principal reasons why the trust was not executed in the lifetime of the beneficiary, and the homestead sold under the terms of the will, and for the purposes therein stated, was that the beneficiary "made her home there, and was desirous of retaining it and ending her days in her old home, where she had constantly resided for a period of thirty or forty years before her death ; that he at various times suggested to her the propriety of the homestead being sold and conveyed under the terms of the will for the purposes therein mentioned, as a necessity for such sale had evidently then arisen, and she objected to it for the reasons above stated."

The trustee, then, it seems, was ready and willing to perform his duty, but the beneficiary objected, for reasons which to her were good and sufficient.

Her objection created a practical difficulty in the way of the trustee. The trustee's estate in the homestead was held in common and undivided with the beneficiary's own estate which she took under the will. The will contemplated that the trustee's half should be sold in connection with the beneficiary's half. The amount necessary to be realized was to be "taken equally from the half taken by her under this will, and the half held by the trustee." It was the clearly expressed intention of the testator "that the two halves of the estate should be diminished equally." It was not the duty of the trustee to furnish support from his half alone. That would have been in entire disregard of the testator's purpose. The devise of one-half to the beneficiary gave her an absolute fee. Her title could not be affected by the later provisions in the will respecting the administration of the trust half. What it would be the duty of the trustee to do with that half would depend in great measure at least upon what the beneficiary should voluntarily do with her own

half.. She was not compelled by the will to sell her half for the
purposes of comfort and support. The trustee could not compel
her to sell it. Her objection to selling her own half, therefore, stood
in the way of the trustee's execution of his trust.

Had she a right to object to the sale of the trust estate? We
think she had. She is presumed to have been sui juris. She could
not be forced to take the benefits of the trust estate. To be sure
it was the duty of the trustee to execute the trust in her favor, but
not, we think, against her will. If she chose to forego the benefits
of the trust, for the sake of continuing to live in her old home,
had she not a right to do so? If she chose to obtain her support
by incurring an indebtedness which would be a charge against her
estate, could she not do so? Could she not do what she liked with
her own? Could she not, if she liked, impose the burden of her
support entirely upon her own half? Undoubtedly she could. She
could have compelled the trustee to execute the trust but he could
not compel her to receive the benefits of the trust. And if she
objected to receiving the benefits of the trust, can it be said that
it was the duty of the trustee to sell the trust estate to provide
those benefits? We think not.

If the beneficiary waived the benefits provided for her by her
husband's will, as we hold she did, and if the trustee was guilty
of no breach of duty to her by not selling the estate, upon what
principle in equity can the court do now what it was not the duty
of the trustee to do then? And to what right of the beneficiary
are the claimants entitled to be subrogated? The very ground
work of the equitable jurisdiction of the court in such a case as this
is claimed to be is, we think, the failure of the trustee to do what
he ought to have done in the lifetime of the beneficiary.

The trust provision was not made for the benefit of creditors of
the beneficiary, but in favor of the beneficiary alone. And when
she prevented its execution in her lifetime, as in this case, no one,
after her death, claiming under her right, can enforce its execution.

Under the circumstances of this case we think the trustee must
be advised that he has no authority to sell the trust estate for the

purpose of paying, in part, the claims of Abbie K. Witham and Mary P. Williams, or any other similar claims.

The trustee was amply justified by the situation in applying to the court for instructions. It is a case where it is proper that the estates involved should bear the expense of the litigation. Taxable costs will be allowed to all the parties who have pleaded. The plaintiff will be allowed a solicitor's fee of twenty-five dollars, and Mr. Laughlin, the only one of counsel who has argued, will be allowed a fee of fifty dollars. One-half of these costs and expenses shall be paid by the administrator of the estate of Mrs. Leighton, and charged by him in his account, and the other half shall be paid by the trustee, and be a charge upon the trust estate in his hands.

*So ordered.*